In Equity. — The bill stated that the plaintiff and defendant were citizens of North Carolina, that the plaintiff, being desirous of obtaining good land in this State, made himself acquainted with vacant lands for the purpose of locating for himself. That the defendant came to his house, and appeared to be desirous *Page 72 
of getting information from him for the purpose of locating.
The defendant urged the plaintiff to make a contract with him, which was accordingly done in writing under seal; the plaintiff was to furnish locations, and the defendant was to use his best endeavors to enter them, and pay the purchase-money into John Armstrong's office.
Each person to have half the lands.
The contract was entered into on the 29th of September, 1783. The plaintiff then furnished the defendant with eight different locations, the situation of which was pointed out, amounting to 5000 acres. That these lands were the best he could acquire a knowledge of after eighteen months' exertions for that purpose. Avers that the land was vacant, and that he performed his part of the agreement; that he also gave the defendant a location for 400 acres on Clinch, and the purchase-money to pay for the same, £40 4s., which was not included in the agreement, but was to be entered by the defendant for the plaintiff.
The defendant undertook, verbally, to do the same. That, relying on the agreement, he did not go to Hillsborough the October following; that the defendant had it in his power to enter these lands, had he used his best endeavors. Avers that the defendant had fraud and deception in view when he made this agreement, and, in pursuance of that intention, had procured others to enter the land for his own benefit; and, in order to deprive the plaintiff of the benefit of his locations, he showed them to a number of persons, so that they might enter them.
That the defendant afterwards told the plaintiff, that his locations were not good for any thing, and that he did not make any use of them.
It prays that the defendant may be directed to convey such part of those lands as he may have a right to, and as the lands lie in Tennessee, where the value can with more justness be ascertained, that he may be decreed to pay the plaintiff the value of the balance of the locations, or such parts as he may not have in his power to convey, so as to make up the value of one-half, pursuant to the agreement. And *Page 73 
to convey the 400 acres on Clinch, or decreed to pay the value.
The article of agreement pursuant to this statement as to entering was exhibited.
The answer, which was filed the 18th February, 1813, admitted the agreement and the receipt of one location, and the money; that he did attend pursuant to this agreement, and no entries were permitted the first, second, nor third days, on account of occupant claims which were to be entered first, and then it was required that all persons should make oath that the locations were for themselves, which prevented him.
That he could not enter the locations whilst he was there, so that he did not discover whether the lands were vacant or not. And when he came away he engaged Col. Charles M'Dowell, who he believes did the best he could, but could not do any thing. On his return he called on the plaintiff, and returned his locations, and told him there was a probability M'Dowell might do something.
That he left the £40 with the entry taker for a location on Elk.
That finding the plaintiff dissatisfied, he procured £40 6s. in money, and refunded it to the plaintiff.
Relies on the statute of limitations of three years as to the last item; denies ever having any interest in the lands specified in the article of agreement, and all fraud respecting the same, and as to the 400 acres not comprised in the article of agreement; and engagement in the article of agreement was induced by the solicitations of the plaintiff. To which answer there was a replication. After which, upon the prayer of the plaintiff, the following issues of fact were ascertained by a jury: —
1st. Did the defendant use his endeavors, c.?
2d. Did he repay the £40 specie certificate and 4s. in money?
3d. If the certificate and money were returned, when?
 4th. Did the defendant violate his trust in showing locations? *Page 74 
5th. Did the defendant use such endeavors as were incumbent?
To which the jury answered at some former term.
1st. In the negative.
2d. The same.
3d. No finding.
4th. In the affirmative.
5th. In the negative.
These proceedings took place many years past. It also appeared, from reading the papers, that there was a demurrer filed at September term, 1802, stating that the remedy was at law, and that if the bill were true, it furnished no ground upon which a court of equity could decree, which was overruled at the same term.
The counsel for the plaintiff moved to have a writ of inquiry, orad quod damnificatus. But by the Court: This writ is collateral in this court, and always ordered, after being informed of the merits. Let the cause proceed upon its merits.
CAMPBELL, for plaintiff. — The demurrer has decided the point that the plaintiff has relief here. Whenever a point has been decided in a cause, it cannot be renewed; it must be at rest.
I will then proceed to consider the nature of the transaction disclosed in the bill.
No doubt can be entertained of the obligatory force of the contract. The consideration is lawful and efficacious. The finding of the jury shows a nonperformance. As to consideration (1 Pow. Cont. 344), the receipt or deposit of the £40 4s. under the terms it was created a trust, and the statute of limitations does not apply to it. Eq. Cas. 304, from which were read, and commented on, several cases respecting deposits, executors, legacies, and offices.
We cannot fix any time from which it might be said the action accrued.
It must be upon demand, as no time was stipulated within which it was to be done. Therefore, until demand, the statute cannot run. None having *Page 75 
been made in this case, until suit, the statute cannot attach.
It was necessary for the plaintiff to come into equity for the purpose of discovering whether the defendant had, or had not, an interest in those lands; and, when proved for any equitable purpose, the Court will see complete justice done and not do things by halves. Suppose A. gives his bond to B. to convey him a tract of land. A. conveys to C. for full and valuable consideration without notice. B. files a bill against A. for a conveyance, not knowing of the sale. A. states that it is not in his power to convey, having sold to C. Will the Court dismiss B. without any redress? No. This would be so manifestly unjust, that a court of equity would direct a writ of ad quoddamnificatus.
MILLER, for the defendant. — This covenant is not obligatory unless the lands had actually been entered, and no action at law would lie upon it. 1 Har. c. 36.
In this case the plaintiff knew that the defendant had not the land; if he did not, then perhaps, upon failing to get a discovery, the Court might inquire of damages.
As to the statute of limitations, it does apply. This is nothing more than an attempt to convert a common case of assumpsit into a trust.
WILLIAMS, on the same side. — Where adequate relief may be had at law you cannot come into this court. 1 Hay. 233, 367, 368, 369.
The defendant says in his answer that he returned the locations; we must take that to be true, as it is not contradicted by proof. He could not be entitled to damages after the locations were returned.
It has been contended that a demurrer is similar to a judgment by default at law.
This is not the law, nor does the overruling a demurrer in equity show that the case is sustainable.
No recovery could be had at law, on account of the length of time the covenant has slept. *Page 76 
In case of bonds for money, presumption of payment will attach in sixteen years. This court will proceed on the same principle in case of covenants.
The general rule of law is twenty years, as to presumption of payment, and not sixteen as has been stated. It has not been quite eighteen years since our bill was filed. We have prayed for relief as well as for discovery; if we fail in the latter, may go for the former.
The whole transaction respecting the acquisition of interest rested in the knowledge of the defendant alone; we were obliged to apply to this court.
The bill had two prominent views, — discovery and relief. The determination upon the demurrer settled the point, that, if our proof should be sufficient, we are entitled to relief. If the statement should turn out differently upon the hearing, then the Court would not be concluded by the demurrer.
But the case is not altered, as to the relief, by any finding of the jury or proof.
It is the same, and therefore cannot be re-examined as to that point. 1 Har. 351.
As to the £ 40 4s. it is certainly a trust, and as such protected from the statute of limitations. 1 Eq. Cas. 304.
Being a trust, jurisdiction is not only given to this court, but the statute is excluded.
It has been objected that we knew the defendant could not make a right to the lands when the bill was filed.
Though a party has not power over property at the time of a contract and so it would be upon parity of reasoning at the time of the bill filed, this court will compel him to convey if in his power. 2 Pow. Cont. 652.