PASSAIC COUNTY CIRCUIT COURT.

DELLA ANDERSON, MOTHER OF KENNETH JOSEPH, DE-
CEASED, AND HARRY ANDERSON, STEPFATHER OF
KENNETH JOSEPH, DECEASED, PLAINTIFFS, v. THE
DELAWARE, LACKAWANNA AND WESTERN RAILROAD
COMPANY, DEFENDANT.

Decided March 4, 1940.

For the plaintiffs, *Ward & McGinnis*.

For the defendant, *John A. Laird*.

WOLBER, C. C. J.   This action is brought to recover dam-
ages for injuries resulting in death.   Plaintiffs are the parents
of decedent, who was killed by the alleged negligence of the
defendant in the operation of its railroad.   The action is
prosecuted by the parents in compliance with the statutes of
Pennsylvania creating the action for death.   12 *Purdon's
Penn. Statutes,* §§ 1601, 1602, *et seq.*

Plaintiffs are residents of Pennsylvania.   Defendant is a
corporation of Pennsylvania.   The alleged cause of action
arose in Pennsylvania.   Service of process in the action was
made upon the defendant in this state under the provisions
of our statute, *N. J. S. A.* 2:26-44.

The case is before the court on motion by the defendant
to dismiss the action upon the ground that this court in its
discretion may decline jurisdiction of the matter because the

parties reside in Pennsylvania, the cause of action arose in Pennsylvania, and under the circumstances existing as to the *locus in quo,* the matter should be heard in the courts of Pennsylvania. In support of this argument, the defendant asserts substantial reasons as follows:

"As appears from the face of the proceedings, the plaintiffs in this action are residents of Old Forge, in the State of Pennsylvania, while the defendant is a corporation of the State of Pennsylvania, and the accident, which is the foundation of the cause of action, occurred in the borough of Taylor in that state.

"The defendant, The Delaware, Lackawanna and Western Railroad Company, maintains its principal office in the State of Pennsylvania at the city of Scranton, which is within five miles of Old Forge and of the borough of Taylor, and service upon it may be readily effected at Scranton and elsewhere throughout the state.

"Practically all the witnesses on the side both of the plaintiff and of the defendant reside in the State of Pennsylvania and for the most part in or near the city of Scranton, and the obvious convenience of the parties would be best served by the trial of this cause of action before the courts of the State of Pennsylvania, and under the facts of this case, this court should exercise its discretion and refuse to take jurisdiction over this litigation for the reason that neither the State of New Jersey nor any of its citizens have any interest therein, and no good reason exists for burdening the taxpayers of this state with the expense of this litigation or in consuming the time of this court in the trial of the same, thereby necessarily delaying the trial of other actions properly brought in this court by citizens of this state. In the instant case, if a trial is to be had in this state, it will be necessary for the defendant to bring not only four or five outside witnesses to this state from the neighborhood of Scranton, Pennsylvania, but also to take away from their employment over an extended period of time and to temporarily replace members of the train crew involved in this accident, as well as surveyors, civil engineers and other expert witnesses, all to the defendant's great inconvenience, expense and damage.

"It further appears from the complaint that plaintiffs' decedent was killed while crossing the right-of-way of the defendant company upon a certain pathway over which it is alleged 'workmen or employes and pedestrians were at all times permitted, allowed and invited * * * to pass frequently over,' and that the accident was due to the negligence of the servants of the defendant company; and that as is claimed, the defendant owed the plaintiff the duty of exercising care for his safety. It is obvious that these allegations may require a finding as to the law of Pennsylvania upon this subject, and as an added reason for referring this litigation to the forum in which the cause of action arose, your affiant alleges that a trial of this case in the State of New Jersey might require that a jury determine from the evidence of expert witnesses what the law of the State of Pennsylvania actually is on this subject, whereas a trial before the courts of Pennsylvania would require that these legal questions be determined by a court undoubtedly familiar with the Pennsylvania law applicable to the situation."

The question is whether the law courts of this state may decline jurisdiction of a transitory cause of action in tort between non-residents (the defendant being considered such because it is a foreign corporation) which arose under the laws of a sister state, where this court has acquired jurisdiction of the person and subject-matter.

It is of course conceded that our courts have jurisdiction to entertain such actions. *Hale* v. *Lawrence*, 21 *N. J. L.* 714 (1848, Nevius, J.) ; *Ackerson* v. *Erie Railway Co.*, 31 *Id.* 309 (Supreme Court, 1865, Beasley, C. J.) ; *Metcufskie* v. *Philadelphia and Reading Railway Co.* 97 *Id.* 100 (Supreme Court, 1921, Black, J.) ; 116 *Atl. Rep.* 170; *Kopenhafer* v. *Pennsylvania Railroad,* 106 *N. J. L.* 530 (1929, Hetfield, J.) ; 148 *Atl. Rep.* 629; *Kryn et al.* v. *Kahn,* 54 *Id.* 870 (New Jersey Supreme Court, 1903, Hendrickson, J.) ; *Martin* v. *Lehigh Valley Railroad,* 114 *N. J. L.* 243 (1934, Perskie, J.) ; 176 *Atl. Rep.* 665; *Cf. Hill* v. *Nelson,* 70 *N. J. L.* 376 (Supreme Court, 1904, Dixon, J.) ; 57 *Atl. Rep.* 411, involving a *local* action.

It is contended, however, for the reasons stated, that our courts have the power to consider the circumstances of each

particular case and to exercise their discretion to decline jurisdiction in such actions if it appears improper to entertain the same. It is asserted that the facts in the instant case are such that require that discretion to be exercised against these plaintiffs and accordingly remit them to the courts of their domicile.

The doctrine invoked is something like the civil law plea of *forum non conveniens*. It has received extended treatment by the courts of this country. See extensive note following *Gregonis* v. *Philadelphia and Reading Coal and Iron Co.,* 235 *N. Y.* 152; 139 *N. E. Rep.* 223; 32 *A. L. R.* 1 (resident *v.* foreign corporation for out-of-state tort), article, Blair, "The Doctrine of Forum Non Conveniens in Anglo-American Law" (1929) *XXIX Col. L. Rev.* 1, and articles by Foster, "Place of trial in Civil Actions," 43 *Harv. L. Rev.* 1217, and "Place of Trial, Interstate Application of Intrastate Methods of Adjustment," 44 *Harv. L. Rev.* 41. Briefly stated, its rationale is that the courts should not allow their time to be taken up with the burden and expense of trying actions which ought under the circumstances to be brought in the jurisdiction where the parties reside, where the cause arose and where the home courts of the litigants are open and provide an effectual remedy for the settlement of their grievances. *Collard* v. *Beach,* 87 *N. Y. Supp.* 884; 81 *App. Div.* 582. This principle is often embodied in statutes of some states. It has been of such long standing in other states as to be evidence of the public policy of those states. *Universal Adjustment Co.* v. *Midland Bank,* 281 *Mass.* 303; 184 *N. E. Rep.* 152; *Jackson & Sons* v. *Lumbermen's Mutual Casualty Insurance Co.,* 86 *N. H.* 341; 168 *Atl. Rep.* 895. It is applicable to actions in contract and tort, although the tendency is to apply it strictly in tort actions for personal injuries and moderately in commercial transactions. *Wertheim* v. *Clerque,* 65 *N. Y. Supp.* 750; 53 *App. Div.* 122; *Davis* v. *Julius Kessler & Co.,* 194 *N. Y. Supp.* 9.

The doctrine of *forum non conveniens* has received recognition in some states and disapproval in others, as appears from the note in 32 *A. L. R.* 1. In New York particularly, its courts have long applied the doctrine because the statute *Code Civ. Proc., sec.* 1780, conferring jurisdiction upon its

courts did not authorize actions between non-residents for personal torts of foreign creation. *Robinson* v. *Ocean Steam Navigation Co.,* 112 *N. Y.* 315; 19 *N. E. Rep.* 625; 2 *L. R. A.* 636 (1889). The facts in that case are somewhat similar to those in the case at bar. Since 1913, although foreign corporations may be sued in certain cases (section 47, General Corporation Law, *Code Civ. Proc., sec.* 1780, as amended), the New York Courts have continued to hold they may in their discretion decline jurisdiction in transitory actions involving personal injuries between non-residents when the cause of action arose in a sister state. The constitutionality of such denial was upheld by the Supreme Court of the United States in a matter involving foreign corporations in an action upon a foreign judgment which resulted from a claim for personal injuries obtained in Illinois. *Anglo-American Provision Co.* v. *Davis Provision Co.,* 191 *U. S.* 373; 48 *L. Ed.* 225. The statute of 1913 was likewise applied by the New York Court of Appeals in the case dealing with an action for personal injuries under the Federal Employers Liability act in *Murnan* v. *Wabash Railroad,* 264 *N. Y.* 244; 158 *N. E. Rep.* 508; 54 *A. L. R.* 1522, and again sustained on the same facts by the United States Supreme Court in *Douglas* v. *New York, New Haven and Hartford Railroad,* 279 *U. S.* 377. In the latter case, Mr. Justice Holmes stated:

"Construed as it has been and we believe will be construed the statute applies to citizens of New York as well as to others and puts them on the same footing. There is no discrimination between citizens as such, and none between non-residents with regard to these foreign causes of action. A distinction of privileges according to residence may be based upon rational considerations and has been upheld by this court, emphasizing the difference between citizenship and residence, in *LaTourette* v. *McMaster,* 248 *U. S.* 465; 39 *S. Ct.* 160; 63 *L. Ed.* 362. Followed in *Maxwell* v. *Bugbee,* 250 *U. S.* 525, 539; 40 *S. Ct.* 2; 63 *L. Ed.* 1124. It is true that in *Blake* v. *McClung,* 172 *U. S.* 239, 247; 19 *S. Ct.* 165; 43 *L. Ed.* 432, 'residents' was taken to mean citizens in a Tennessee statute of a wholly different scope, but whatever else may be said of the argument in that opinion (compare page 262, 172 *U. S.* (19 *S. Ct.* 165)), it cannot prevail over the latter deci-

sion in LaTourette *v.* McMaster, and the plain intimations of the New York cases to which we have referred. There are manifest reasons for preferring residents in access to often overcrowded courts, both in convenience and in the fact that broadly spaking it is they who pay for maintaining the courts concerned."

See, also, *Boright* v. *Chicago Railroad*, 230 *N. W. Rep.* 457 (Minnesota, Stone, J., dissenting opinion).

In some states the rule is fixed by statute. In others, the legislature has not declared any policy, as a result of which the rule was declared that the power to decline jurisdiction would offend the United States Constitution, which prohibits discrimination against non-residents and violates the Fourteenth Amendment guaranteeing equal rights, privileges and immunities, and that the right to select the forum is a privilege guaranteed. This line of authorities is headed by *Cafrede* v. *Gardner*, 79 *Mich.* 332; 44 *N. W. Rep.* 623; 7 *L. R. A.* 511. To the same effect is *Eingarten* v. *Illinois Steel Co.,* 94 *Wis.* 70; 68 *N. W. Rep.* 664; 34 *L. R. A.* 503; *State, ex rel. Prall* v. *District Court,* 126 *Minn.* 501; 148 *N. W. Rep.* 463; *Ann. Cases* 1915 D, 198. See *contra, Robinson* v. *Ocean Steamship Navigation Co., supra.*

In our state, the legislature has long provided for actions against foreign corporations. The present statute, *N. J. S. A.* 2:26-44, descends from *Pamph. L.* 1865, *p.* 467, and *Pamph. L.* 1896, *ch.* 185, § 88. At present it provides:

"Foreign corporations; personal or substituted service. Process in a personal suit or action commenced against a foreign corporation in any of the courts of this state shall be served forthwith after its delivery to the sheriff or other officer for service by serving a copy thereof either personally on, or by leaving the same at the usual place of abode in this state of any officer, director, agent, clerk or engineer of the corporation, resident of this state, or personally on any ticket or freight agent of the corporation in the county in which the venue of the action is laid, or by leaving the copy of the process at the office, depot or usual place of business within this state of the corporation.

"If there are none of the above-named persons resident within this state, and if there is no office, depot or place of

business within this state, the process may be served on any motorman, conductor or servant of the corporation within this state and acting in the discharge of his duties."

We also have section 202 of the 1903 Practice act, relative to venue, now *N. J. S. A.* 2:27-19, which reads as follows:

"A transitory action shall, at the discretion of the court, be tried in the county in which the cause of action arose, or in which the plaintiff or defendant reside at the time of the commencement of the action, or, if the defendant is non-resident, in the county in which process was served upon him."

Recognition by our courts of causes of action arising under "Death Statutes" of sister states is of frequent occurrence and long standing. *Lower* v. *Segal,* 59 *N. J. L.* 66 (Supreme Court, 1896, Garrison, J.); 34 *Atl. Rep.* 945; *Rankin* v. *Central Railroad,* 77 *N. J. L.* 175 (Supreme Court, 1908, Bergen, J.); 71 *Atl. Rep.* 55. The very statute involved, which is the source of the present action, has been enforced in our state on many occasions. *Lower* v. *Segal, supra; Norko* v. *Rau,* 107 *N. J. L.* 479 (1930, Case, J.); *Martin* v. *Lehigh Valley Railroad,* 114 *Id.* 243 (1934, Perskie, J.); 154 *Atl. Rep.* 766. These actions are sued here upon the basis that they are transitory and do not offend our public policy. *Lower* v. *Segal, supra,* following *Wright* v. *Remington,* 41 *N. J. L.* 48 (Supreme Court, 1879, Reed, J.).

For the rule in our state it will be helpful to examine the case of *Sielcken* v. *Sorenson,* 111 *N. J. Eq.* 44 (Chancery, 1933, Backes, V. C.); 161 *Atl. Rep.* 47. In that case the bill was for a partnership accounting and alleged that Sielcken, Sorenson and Nielson formed the partnership of Crossman & Sielcken, commission merchants, New York, in 1913; Sielcken owned the capital assets; Sielcken was to have seventy-five per cent. of the profits, Sorenson and Nielson each twelve and a half per cent. The firm dissolved September 30th, 1917; Sielcken died October 8th, 1917, in Germany. He was a resident of Germany and by his last will and testament gave his residuary estate, which included particularly with respect to the liquidation of the co-partner-his interest in the firm, to his widow, Clara Sielcken (now Schwarz), and appointed the Irving Trust Company of New York executor as to his property in the United States and

ship. The will was admitted to probate in the Surrogate's Court of New York county, and letters testamentary were issued to the trust company. In September, 1930, Nielson died, a resident of Bergen county, this state, and by his last will and testament he appointed the Chase National Bank of New York executor. Letters testamentary were issued to the bank by the surrogate of the county upon admitting the will to probate. Ancillary letters were issued by the surrogate of New York county. In October, 1930, Sorenson assigned his interest in the firm of Crossman & Sielcken to the complainant, who alleges that there has never been a complete accounting of the firm's affairs, and prays for an accounting.

The defendants Sorenson and Mrs. Schwarz answered. The Irving Trust Company, executor of Sielcken, was not in court; substituted service of process upon it was set aside. *Sielcken* v. *Sorenson,* 109 *N. J. Eq.* 397; 157 *Atl. Rep.* 561. The remaining defendant, Chase National Bank, executor of Nielson, by answer, in lieu of pleas, set up among other things: (c) New York is the proper and convenient forum for this action.

Vice-Chancellor Backes said that the principal stumbling block to a full and complete accounting of the partnership affairs in this state is the absence from our jurisdiction of the Irving Trust Company, executor of Sielcken, representing a three-quarters interest in the firm, and held that there can be no decree to bind it; the action is *in personam.* The court held that notwithstanding that the complainant may recover upon an accounting against the Nielsen estate, it was not called upon to exercise that jurisdiction where the forum of the complainant's domicile and that of the responsible defendants is the more convenient for the trial of the cause, has the better facilities, and, because of its jurisdiction over all the parties, may do complete justice, which this court cannot do, in the circumstances. At page 47 the Vice-Chancellor said:

"While we fully recognize the complainant's right to sue in our courts, and that if he has a sueable right his motives are immaterial, yet, the courts of his own state having full and complete jurisdiction of the subject-matter and of the parties and able to give him more adequate relief than he can

hope to get here, we must deny him the use of our aid and require him to find his relief in his own domicile. The courts of his own state have spoken vigorously of intruding suitors wandering into their courts for justice when they can find it as well, if not better, in their own home town at their own doorsteps." And relied upon the sentiments expressed in the following New York cases: *DeWitt* v. *Buchanan,* 54 *Barb.* 31 (1868); *Ferguson* v. *Neilson,* 11 *N. Y. Supp.* 524 (1890); *Wertheim* v. *Clerque,* 65 *Id.* 750 (1900); *Hoes* v. *New York, New Haven and Hartford Railroad,* 173 *N. Y.* 441 (1903); *Collard* v. *Beach,* 81 *N. Y. Supp.* 619 (1904).

In other words, he based his determination largely on the rule of the New York courts.

In *1043 Avenue St. John, Inc.,* v. *Dillon,* 62 *N. J. L. J.* 389 (Essex County Circuit Court), my learned colleague, Judge William A. Smith, considered a motion made by the plaintiffs to strike out the answer of the defendant. The action was instituted by summons issued out of the Circuit Court by two corporations of the State of New York which were not authorized by our laws to engage in business in this state. The defendant was a resident of the State of New York and it was sought to recover the principal sum on a bond executed by the defendant and delivered to one Keller, which bond had been assigned to the plaintiffs. The bond was made, executed and delivered in the State of New York, and was given to secure a mortgage by the plaintiff on certain property located in the State of New York. The defendant was not served with process. Service of a copy of the summons and complaint was acknowledged by an attorney of the defendant. The only reason urged for the litigation being in the Essex Circuit was that previously a suit had been started in Monmouth county in this state and service effected upon the defendant, and that in order to suit the convenience of the parties, that action was discontinued, and defendant's attorney acknowledged service of a summons and complaint in the Essex Circuit. While conceding the right of the court to assume jurisdiction, Judge Smith assumed the right to exercise his discretion to refuse jurisdiction. He indicated, however, that if the service has been made in Essex county upon a defendant sojourning therein, his view might be other-

wise, but that he saw no reason for accepting jurisdiction to suit the convenience of New York litigants, which was the sole ground upon which acceptance of jurisdiction was urged.

In *Kantakevitch* v. *Delaware, Lackawanna and Western Railroad*, 18 *N. J. Mis. R.* 77; 10 *Atl. Rep.* (2d) 651 (Hudson County Circuit Court, 1940), my learned colleague, Brown, C. C. J., recently had before him a motion of the defendant to quash the summons and set aside the complaint, or in the alternative refuse to entertain jurisdiction. The facts of the case are substantially the same as the facts in the instant case. The plaintiff was a resident of Pennsylvania and in September, 1937, was injured while crossing the tracks of the defendant located in Pennsylvania, where the defendant corporation was also incorporated. The complaint charged that the plaintiff at the time was using a pathway which because of its general use by the public became a permissive crossing under the laws of Pennsylvania, requiring the defendant carrier in the operation of its trains over the crossing to sound a warning to persons using the pathway. Summons was served on the defendant in Hudson county under *N. J. S. A.* 2:26-44 providing for service of process on foreign corporations in this state, already adverted to in the instant case. In the supporting affidavit it is stated that:

(1) Practically all the witnesses in the case reside in Pennsylvania;

(2) Neither New Jersey nor any of its citizens have any interest in the case;

(3) That no good reason exists for burdening the taxpayers of New Jersey with the expense of the litigation and delaying the trial of causes of its own citizens;

(4) That the trial of the cause will make it necessary to bring four or five members of defendant's train crew from Pennsylvania to New Jersey for an extended period of time thereby requiring replacements;

(5) That it would likewise be necessary to bring civil engineers together with experts on the law of Pennsylvania from that state at great cost and inconvenience;

(6) That a similar case tried in this state consumed two weeks' of time and four other cases of a similar nature are

now awaiting trial in our courts, all of which will entail great expense to the taxpayers of our state.

Judge Brown also referred to *N. J. S. A.* 2:27-19, already mentioned in this opinion, that a transitory action shall, at the discretion of the court, if defendant is a non-resident, be tried in the county in which process was served upon him.

Judge Brown held that according to the decisions and statutes cited, the motion to quash the summons and strike the complaint must be denied.

As to the other ground of the motion that the court should refuse to entertain jurisdiction, he said that it does not appear to have been considered in the decisions in this state. He concluded that there was in *N. J. S. A.* 2:26-44 no word or reasonable inference from which can be drawn any declaration of a public policy, much less any restriction or limitation on the judicial discretion of the trial court, and found nothing in our statutes or decisions that impairs or limits the discretion of the trial court. He said (at *p.* 80) :

"While the practice in our courts has been to deny motions and overrule demurrers in which it was sought to dismiss transitory actions of the kind now being considered there appears no practice or policy established in New Jersey of denying the discretionary power of a trial court to refrain from exercising its discretion by refusing to proceed with the trial of such a case where to do so would be an injustice to any of the parties; particularly is this true where the remedy is more complete in the jurisdiction where the parties reside. Citing *Sielcken* v. *Sorenson, supra; St. John, Inc.,* v. *Dillon, supra.* It is incontestably necessary to the effective performance of judicial functions that this discretionary power should be preserved and not denied."

He held that where the ends of justice clearly indicate that if a controversy tried in this state would result in an unfair burden upon and disadvantage to citizens of this state or that the controversy may be more suitably tried and the remedy more complete in another forum, then the parties should be relegated to that forum; and that since it is difficult, if not impossible, to state any detailed and settled rule of procedure that could be applied in every case, it may be necessary to

decide each case upon its own facts and circumstances. He determined that in the light of these considerations the facts presented to him on the motion did not convince the court that it should refrain from exercising its jurisdiction.

My own study of the questions involved in the case before me induces me to agree with Judge Brown that it is the law of our state that our courts have jurisdiction of transitory actions between non-residents for torts committed outside of New Jersey, but that the trial court has a discretion to decline such jurisdiction where it would result in an unfair burden to our own citizens because of the expense and congestion of trying foreign causes between non-residents, or cause an injustice to any of the parties. Since our residents bear the cost of the maintenance of our courts it cannot be said that there is any hostile discrimination in denying their use to non-residents who can sue elsewhere.

In the instant cases, besides the urged inconvenience of witnesses and employes to travel from Pennsylvania to the place of trial in New Jersey, together with the necessity for experts on the applicable Pennsylvania law, the value of a jury view of the *locus in quo* in Pennsylvania and the expense to the county of Passaic for the trial of this and other similar cases, which factors were considered by Judge Brown and deemed insufficient to him for declining jurisdiction in the Kantakevich case, we have the additional fact that the statute of limitations has tolled this cause of action in the State of Pennsylvania and the plaintiffs would be remediless in their home courts, unless the offer of the defendant carrier by formal stipulation to waive it would receive recognition there. That there are at present two other similar cases, one a retrial, pending for trial in this county, does not alone move me to believe that we have at present an epidemic of "imported" cases which should induce me to decline jurisdiction in the instant case as a means of protecting our residents from any unjustifiable burden as a result of such controversies being permitted to go to trial here.

Limiting myself strictly to the facts herein, I am of the opinion that the motion to dismiss upon the specified grounds should be denied, without costs.