THOMAS E. ZURICK, Petitioner,

*v.*

ADA WEST INMAN, Respondent.

426 S.W.2d 767.

(*Knoxville,* September Term, 1967.)

Opinion filed March 29, 1968.

Bishop, Thomas, Leitner, Mann & Milburn, Chattanooga, for petitioner.

Wagner, Weeks & Nelson, Chattanooga, for respondent.

Mr. Justice Dyer delivered the opinion of the Court.

This case involves the application of the doctrine of forum non conveniens in a transitory tort action. The trial court applying the doctrine dismissed the case. The Court of Appeals reversed the action of the trial court and we granted certiorari. In this opinion the parties

will be referred to as in the trial court; that is, petitioner here, Thomas E. Zurick, as defendant, and respondent here, Ada West Inman, as plaintiff.

The plaintiff is a resident of Dade County, Georgia. The defendant is a resident of Birmingham, Alabama. On March 22, 1966 the vehicles of these parties were involved in an accident in Dade County, Georgia, the situs of the accident being about nine miles from the boundary line between Dade County and Hamilton County, Tennessee. After the accident plaintiff was brought to the hospital in Chattanooga, Hamilton County, Tennessee, for treatment of injuries.

The next day, March 23, 1966, in an action for damages by plaintiff arising out of this accident, personal service was had on defendant in Hamilton County, Tennessee. To this summons issued out of the Circuit Court of Hamilton County, Tennessee, defendant filed a plea in abatement with affidavit attached attacking the jurisdiction of the court on the ground of forum non conveniens. To this action plaintiff filed a replication with affidavits attached. These pleadings with affidavits make up the entire record in this case.

In *Cotton v. Louisville & Nashville R.R. Co.*, 14 Ill.2d 144, 152 N.E.2d 385 (1958), the court described this doctrine in the following language:

Generally speaking, *forum non conveniens* deals with the discretionary power of the court to decline to exercise a possessed jurisdiction whenever, because of varying factors, it appears that the controversy may be more suitably or conveniently tried elsewhere. 152 N.E.2d at 388.

In *Universal Adjustment Corporation v. Midland Bank, Limited, of London, England, et al.,* 281 Mass. 303, 184 N.E. 152, 87 A.L.R. 1407 (1933), the court in regard to the doctrine stated:

The governing principle in such circumstances is that the parties have standing in the courts of this Commonwealth, not as matter of strict right but only as matter of comity. * * * Where it appears that complete justice cannot be done here, that the defendant will be subjected to great and unnecessary inconvenience and expense, and that the trial will be attended, if conducted here, with many if not insuperable difficulties which all would be avoided without special hardship to the plaintiff if proceedings are brought in the jurisdiction where the defendant is domiciled, where service can be had, where the cause of action arose and where justice can be done, our courts decline to take jurisdiction on the general ground that the litigation may more appropriately be conducted in a foreign tribunal. Stated succinctly, the principle is that where in a broad sense the ends of justice strongly indicate that the controversy may be more suitably tried elsewhere, then jurisdiction should be declined and the parties relegated to relief to be sought in another forum. 184 N.E. at 158.

The origin of the doctrine is somewhat obscure and from our research it appears to have originated in Scotland where a court having jurisdiction could refuse to hear the case when the ends of justice would be best served by having it tried in another forum. *Brown v. Cartwright,* 20 Scot.L.Rev. 818 (1883); *Williamson v. North Eastern R.R.,* 21 Scot.L.Rev. 421 (1884). Prior to 1929 this doctrine at least by its latin appellation rarely

appeared in American reports. In that year (1929) Blair published an article on the doctrine in 29 Col.L.Rev. 1, wherein he said many American courts had for some time been applying the doctrine without referring to it by its latin appellation. It is now generally agreed this article by Blair brought the term forum non conveniens into American law. See Barrett, The Doctrine of Forum non Conveniens, 35 Calif.L.Rev. 380 (1947). Blair in his article may have had reference to Tennessee in light of our case of *Avery v. Holland,* 2 Tenn. 71 (1806). In the *Avery* case the language of Mr. Justice White in his concurring opinion is significant in that his language is similar to that used by present day courts on this doctrine. This language is as follows:

> * * * if it appears upon the face of the pleadings that both of the litigant parties are foreigners and a foreign contract, we ought not to interpose. By the nature of all governments, courts were constituted to administer justice in relation to their own citizens; and not to do the business of citizens or subjects of other states. The judges of their own state are employed, and paid for that purpose.

> To encourage the resort of foreigners to our courts would be doing injustice to our own citizens who have business here to be attended to. 2 Tenn. at 71.

 The early acceptance of this doctrine by the several states may have been retarded by Section 2 of Article 4 of the Constitution of the United States under which the citizens of each state are entitled to the privileges and immunities of the citizens of the several states. In *Douglas v. New York, New Haven & H. R.R. Co.,* 279 U.S. 377, 49 S.Ct. 355, 73 L.Ed. 747 (1928), the court apparently took the position Article 4 was not violated since dis-

missing of suits was based on residence and not citizenship. In *State of Missouri ex rel. Southern Railway Co. v. Mayfield,* 340 U.S. 1, 71 S.Ct. 1, 95 L.Ed. 3 (1950), the court held the acceptance or rejection of the doctrine was a matter for the State to decide and such would not violate Article 4 unless there was discrimination against citizens of other states. Today the application of the doctrine so as to refuse jurisdiction in an action brought by a citizen of another state will not violate Article 4 if jurisdiction would also have been refused had the plaintiff been a citizen of the forum state. This position is well stated in 20 Am.Jur.2d, Courts, Section 181, as follows:

> Thus although courts of a particular state may, because of the crowded calendars, refused, under the doctrine of forum non conveniens, to exercise jurisdiction in actions brought by nonresidents, they must apply this to citizens and non-citizens of the state indiscriminately. They cannot, without violating the privileges and immunities clause, apply this policy to nonresident noncitizens but not to nonresident citizens.

Our research indicates several of our sister states have not considered the doctrine. The following states have considered and applied the doctrine:

| | |
|---|---|
| Arkansas: | *Running v. Southwestern Freight Lines, Inc.,* 227 Ark. 839, 303 S.W.2d 578 (1957); *Hicks v. Wolfe,* 228 Ark. 406, 307 S.W.2d 784 (1957), holding, however, that the doctrine would not be applied as between counties of the same state. |
| Ohio: | *Barnett v. Baltimore & Ohio R. Co.,* 119 Ohio App. 329, 200 N.E.2d 473 (1963). |

California: *Price v. Atchison, Topeka & Santa Fe Ry. Co.*, 42 Cal. 2d 577, 268 P.2d 457, 43 A.L.R.2d 756 (1954).

Florida: *Atlantic Coast Line Railroad Co. v. Ganey*, 125 So.2d 576 (Fla.App. 1960); *Southern Railway Co. v. Bowling*, 129 So.2d 433 (Fla.App.1961).

Illinois: *Whitney v. Madden*, 400 Ill. 185, 79 N.E.2d 693 (1948); *Cotton v. Louisville and Nashville Railroad Co.*, 14 Ill.2d 144, 152 N.E.2d 385 (1958).

Oklahoma: *St. Louis-San Francisco Ry. Co. v. Superior Court*, 276 P.2d 773 (Okl. 1954); *St. Louis-San Francisco Ry. Co. v. Superior Court*, 290 P.2d 118 (Okl.1955); *Atchison, Topeka & Santa Fe Ry. Co. v. District Court*, 298 P.2d 427 (Okl.1956).

Louisiana: *Stewart v. Litchenburg*, 148 La. 195, 86 So. 734 (1920); *Union City Transfer v. Fields*, 199 So. 206 (La.App. 1940).

Maine: *Foss v. Richards*, 126 Me. 419, 139 A. 313 (1927).

Minnesota: *Hill v. Upper Mississippi Towing Corp.*, 252 Minn. 165, 89 N.W.2d 654 (1958); *Johnson v. Chicago Burlington & Quincy R. Co.*, 243 Minn. 58, 66 N.W.2d 763 (1954).

Massachusetts: *Universal Adjustment Corp. v. Midland Bank, Ltd. of London*, 281 Mass. 303, 184 N.E. 152, 87 A.L.R. 1407 (1933).

New Hampshire: *Jackson & Sons v. Lumbermen's Mutual Cas. Co.*, 86 N.H. 341, 168 A. 895 (1933).

New York: *DeLaBouvillerie v. De Vienne,* 300 N.Y. 60, 89 N.E.2d 15, 48 A.L.R.2d 798 (1949); *Taylor v. Interstate Motor Freight System,* 285 App.Div. 1010, 139 N.Y.S.2d 130 (1955).

New Jersey: *Anderson v. Delaware, L. & W. R. Co.,* 18 N.J.Misc. 153, 11 A.2d 607 (1940); *Vargas v. A. H. Bull S. S. Co.,* 25 N.J. 293, 135 A.2d 857 (1957); *Gore v. United States Steel Corp.,* 15 N.J. 301, 104 A.2d 670, 48 A.L.R.2d 841 (1954).

Utah: *Mooney v. Denver & R. G. W. R. Co.,* 118 Utah 307, 221 P.2d 628 (1950).

Texas: *Forcum-Dean Co. v. Missouri Pacific Railroad Co.,* 341 S.W.2d 464 (Tex. Civ.App.1960).

Pennsylvania: *Plum v. Tampax, Inc.,* 399 Pa. 553, 160 A.2d 549 (1960); *Radio Corp. of America v. Rotman,* 411 Pa. 630, 192 A.2d 655 (1963).

Several states have considered and refused to apply the doctrine:

Washington: *Lansverk v. Studebaker - Packard Corp.,* 54 Wash.2d 124, 338 P.2d 747 (1959).

Missouri: *State ex rel. Southern Ry. Co. v. Mayfield,* 362 Mo. 101, 240 S.W.2d 106 (1951).

Nebraska: *Herrmann v. Franklin Ice Cream Co.,* 114 Neb. 468, 208 N.W. 141 (1926).

Wisconsin: *Bourestom v. Bourestom,* 231 Wis. 666, 285 N.W. 426 (1939); *Eingartner v. Illinois Steel Co.,* 94 Wis. 70, 68 N.W.664, 34 L.R.A. 503 (1896).

Under the holdings in the above cited cases applying the doctrine it is generally held that courts, absent statutory restrictions, have inherent authority to apply the doctrine. Even in some of the cases rejecting the doctrine the rejection is not on lack of authority, but for other reasons. This power is inherent in the courts since in some cases, due to various factors, the interest of justice so demand.

■ It results and we so hold courts of general jurisdiction in Tennessee have inherent power to apply the doctrine of forum non conveniens as a ground for refusal to exercise jurisdiction over a cause of action arising beyond the boundaries of Tennessee.

■ The doctrine of forum non conveniens presupposes the court has jurisdiction of both the parties and the subject-matter. The doctrine also presupposes there is at least one forum other than the forum chosen where the plaintiff may bring his cause of action, and it is necessary the trial court determine such other forum is available. 90 A.L.R.2d 1112; 48 A.L.R.2d 815; 20 Am.Jur.2d, Courts, Section 714; *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 10 (1947). In the case at bar no question is made that the chosen forum (Circuit Court of Hamilton County, Tennessee) did not have jurisdiction to try the cause. Also, in the case at bar it is not disputed there is at least one other forum available to plaintiff. Under the Georgia non-resident motorist statutes the defendant was subject to process in the courts of Dade County, Georgia.

■ Having held this doctrine available in this State, we think it appropriate to discuss in a general way the factors considered in determining applicability of the doctrine. These factors are so numerous and various that no court has attempted to catalogue them. They generally relate to the parties, witnesses, subject-matter, or the court. In regard to the factors used, the language most often quoted is by Mr. Justice Jackson in *Gulf Oil Corp. v. Gilbert,* supra, wherein we find the following:

"Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses.

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting

upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." 330 U.S. at 508, 67 S.Ct. at 843.

Since the application of the doctrine is a matter of discretion with the trial court the review here on appeal is limited to whether there has been an abuse of discretion. 48 A.L.R.2d 823. Section 12; 20 Am.Jur.2d, Courts, Section 175. However, it is necessary an appellate court review the various factors used in a particular case in order to determine if there has been an abuse of discretion.

In the case at bar the factors presented by the defendant requesting the doctrine be applied are: (1) the cause of action arose outside the State of Tennessee; (2) both

parties are non-residents of Tennessee; (3) the laws of the State of Georgia will govern the trial of the cause; and (4) the witnesses live in Dade County, Georgia. The factor presented by the plaintiff requesting the application of the dotcrine be denied is: (1) the medical witnesses for plaintiff reside in Hamilton County, Tennessee. This record reflects these were all the factors considered by the trial judge.

■ That the cause of action arose outside the State is not a factor to be considered on the question of whether the doctrine should be applied in a particular case. It is necessary this fact exist and be shown in order to raise the question of the application of the doctrine. *Running v. Southwestern Freight Lines, Inc.,* supra.

The next factor considered was the fact both parties **were non-residents** of Tennessee. We recognize that some courts, particularly New York, as a matter of public policy refuse jurisdiction on the sole ground the parties are non-residents and the cause of action arose outside the State, unless special reasons are shown which make retention of jurisdiction necessary or proper. As we read these cases the emphasis is placed on the convenience of the court. See Annotations 32 A.L.R. 6; 48 A.L.R. 2d 800. We are not inclined to follow this holding. In *Kirkland v. Greer,* 295 Ky. 535, 174 S.W.2d 745 (1943), the court on this point stated:

> We do not agree with appellant's contention that the Courts of Kentucky should decline to take jurisdiction merely because the parties to the litigation are non-residents and the cause of action accrued outside the State. Granted that in such cases the exercise of juris-

diction by the Kentucky Courts is discretionary, nevertheless, in the absence of special circumstances making it impracticable to do full justice between the parties, the principles of comity would seem to dictate their exercise of such jurisdiction. 174 S.W.2d at 746.

In *Stewart v. Litchenburg*, 148 La. 195, 86 So. 734 (1920), the court held the fact the parties are non-residents is not in itself sufficient grounds to apply the doctrine.

■ The fact the parties are non-residents does not of itself give the court authority to apply the doctrine. We do not see how it could be said from this fact, no other facts appearing, that such would strongly indicate the ends of justice would be better served by having the cause tried in another forum.

The non-residency of the parties is a factor in application of the doctrine when considered with other circumstances relating to non-residency. For example, when the forum chosen by the plaintiff would require a defendant a great expense and inconvenience to transport himself and/or his witnesses a long distance when in fact there is an equally appropriate forum available to plaintiff not requiring such expense and inconvenience of defendant, then the non-residency with these attending circumstances would be a factor to be considered. There could be many other circumstances relating to non-residency but we have used the one relating to distance since in the case at bar under this record this is the only circumstance that could relate to non-residency.

In the case at bar defendant will have to travel from his home in Birmingham, Alabama, approximately the same distance whether the trial be held in the forum

chosen by plaintiff, or the other available forum in Georgia. Under these circumstances we do not think the nonresidency of the parties would be a factor in the application of the doctrine.

The defendant next insists the doctrine should be applied since the court will be required to ascertain and apply the laws of the State of Georgia applicable to the case. On this issue the court in *Mexican Nat. R. Co. v. Jackson*, 89 Tex. 107, 33 S.W. 857, 31 L.R.A. 276 (1896), stated:

> The decisions of this court (well sustained by high authority) establish the doctrine that the courts of this state will not undertake to adjudicate rights which originated in another state or country, under statutes *materially* different from the law of this state in relation to the same subject. 33 S.W. at 860. (Emphasis supplied.)

In *Flaiz v. Moore*, 359 S.W.2d 872 (Texas 1962), the tort occurred in South Dakota and suit was brought in Texas by a non-resident plaintiff against a non-resident defendant. The issue was whether Texas should take jurisdiction since in Texas the law applicable to the case was the law of contributory negligence while in South Dakota the law applicable was that of comparative negligence and the Texas Court would have to apply the South Dakota law. On this point the court held:

> The only question presented to the intermediate court for decision was whether the dismissal of the suit could be sustained on the ground urged in respondent's second plea to the jurisdiction. It held, and we think correctly so, that the law of South Dakota is not so dissimilar to the law of Texas as to justify the trial

court's refusal to exercise jurisdiction in this case. While contributory negligence ordinarily precludes a recovery under the laws of Texas, the doctrine of comparative negligence does not violate any public policy of this State. 359 S.W.2d at 876.

All through the legal history of our State the courts have had not only the power but are constantly enforcing rights of actions arising under the laws of another state which require the ascertainment and application of the law of the foreign state, and this we have done even when the law of the foreign state be different from our own. The only exception being where the law of the foreign state be against the public policy of our State. See *Whitlow v. N. C. & St. L. Ry. Co.,* 114 Tenn. 344, 357, 84 S.W. 618, 68 L.R.A. 503 (1904).

Under the doctrine of forum non conveniens the application of laws of another state becomes a factor when it is shown the laws of the foreign state, applicable to the case, are so materially different from our own that their application would present difficulty to the court; or the laws of the foreign state, applicable to the case, are against the public policy of our State. In the case at bar there is no showing in this record the law of Georgia, applicable to the case, would present any difficulty to the court in applying same; nor is it shown the law of Georgia, applicable to the case, is in any way against the public policy of this State.

The fourth factor insisted upon by defendant is in regard to out-of-state witnesses. In *Cotton v. Louisville & Nashville Railroad Co.,* supra, the plaintiff, a resident of Kentucky, was injured in defendant's switchyard in Covington, Kentucky. Defendant is a Kentucky corpora-

tion. Plaintiff brought suit in East St. Louis, Illinois, a distance of 338 miles from Covington, Kentucky. The defendant in its motion for application of doctrine stated as follows:

"Defendant will present the testimony of eight occurrence witnesses, all of whom live at or near Covington, Kentucky, which is 338 miles by railroad and 346 by highway from East St. Louis. Defendant will present the testimony of three doctors together with hospital records, all of whom live in Covington, Kentucky, or Cincinnati, Ohio." 152 N.E.2d at 397.

The Illinois Court found this language to be insufficient to support a motion for application of the doctrine since the names of the witnesses and the nature of proof to be adduced was not particularized therein. This Illinois case cites the case of *General Portland Cement Co. v. Perry,* 204 F.2d 316 (7 Cir.1953), which, on the point at issue, the court stated:

"The failure of the defendant to give the names of its witnesses, to indicate what their testimony would be, to show how vital that testimony would be to the defense of the case and to show why the depositions of these witnesses could not be used successfully, furnished a reasonable basis for Judge Perry to find that the defendant failed to sustain its burden of showing that the balance as to the convenience of the witnesses was so strongly in favor of the defendant as to overcome the weight to be given to the plaintiff's choice of forum." 152 N.E.2d at 397.

In *Chicago, Rock Island & Pacific R. Co. v. Hugh Breeding, Inc.,* 232 F.2d 584 (10th Cir.1956), the court

found as stated in the headnotes which correctly state the holding of the court as follows:

> Where railroad sought a change of venue, but in support of its motion for such change merely stated that it was compelled to transport 10 of its employees to another state and that it might not be able to compel attendance of 10 non-employee witnesses and did not show the materiality of the evidence of such 20 witnesses, abuse of discretion in refusing to transfer the case was not shown. 232 F.2d at 585.

■ Under the holdings of the three cases above cited, the fact there are out-of-state witnesses is not of itself enough to support an application of the doctrine. This factor has to be supported by facts showing why, due to out-of-state witnesses, there is a strong likelihood defendant will be done an injustice if forced to go to trial in the forum selected by plaintiff. This can be done by giving the names of the witnesses, nature and materiality of their testimony, and any other applicable facts. It is upon these facts the trial court exercises its discretion in the application of the doctrine.

In the case at bar the only facts on out-of-state witnesses is the statement of defendant in his pleadings, which statement is as follows:

> * * * that all the witnesses to the automobile accident involving these parties reside in or near Trenton, Georgia.

This statement, no other facts appearing, will not support an application to apply the doctrine.

■ In the case at bar, as noted above, defendant has brought to the attention of the trial court three factors

supporting his application of the doctrine of forum non conveniens; that is, (1) non-residency of the parties; (2) construction and application of foreign laws; and (3) out-of-state witnesses. One, all, or a combination of these factors could, upon proper showing, support an application for the doctrine. Under a detailed examination of these factors, made above in this opinion, it is apparent defendant has failed to present any facts in regard to any of these factors which could support a finding the ends of justice in a broad sense require the case be tried in another forum. Stated in another manner, the trial judge had no facts before him upon which he could exercise his discretion.

The judgment of the Court of Appeals is affirmed and the cause remanded to the Circuit Court of Hamilton County for trial.

BURNETT, CHIEF JUSTICE, and CHATTIN, CRESON and HUMPHREYS, JUSTICES, concur.