IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 11, 2015 Session

## TERRY PANTUSO v. WRIGHT MEDICAL TECHNOLOGY INC., ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00155214     Donna M. Fields, Judge**

_____

**No. W2014-02315-COA-R9-CV – Filed August 31, 2015**
_____

In this interlocutory appeal, the defendants appeal the trial court's denial of their motion to dismiss a product liability lawsuit on the ground of *forum non conveniens*. Discerning no abuse of discretion by the trial court, we affirm.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the Court, in which BRANDON O. GIBSON, J., and KENNY ARMSTRONG, J., joined.

George T. Lewis, III, and Quinn N. Carlson, Memphis, Tennessee, for the appellants, Wright Medical Group, Inc., and Wright Medical Technology, Inc.

Michael O. Fawaz, Royal Oak, MI, for the appellants, Wright Medical Group, Inc., and Wright Medical Technology, Inc., *Pro Hac Vice*.

 R. Christopher Gilreath, Memphis, Tennessee, and Michael Jerome Warshauer, Atlanta, Georgia,  for the appellee, Terry Pantuso.

## OPINION

### Background

On April 7, 2007, Plaintiff/Appellee Terry Pantuso filed a complaint alleging product liability against Defendants/Appellants Wright Medical Technology, Inc., ("Wright Medical Technology") and its wholly owned subsidiary, Wright Medical Group, Inc. ("Wright Medical Group," and together with Wright Medical Technology, "Wright Medical") in the

Shelby County Circuit Court. Mr. Pantuso is a resident of Utah. Wright Medical Technolgy is a Delaware corporation with its principal place of business in Memphis, Tennessee and is registered to do business in both Tennessee and Utah. Wright Medical Group is a Delaware corporation with its principal place of business in Memphis, Tennessee and is registered to do business in Tennessee.

According to the complaint, Wright Medical was the designer, manufacturer, and marketer of a hip replacement system, known as the Profemur hip device, that was surgically implanted into the left and right sides of Mr. Pantuso's body in 2007 in a Utah hospital. According to Mr. Pantuso's complaint, the Profemur hip device was chosen by Mr. Pantuso's physician due to the device's marketing as the appropriate hip replacement system for active individuals. Despite this marketing, Mr. Pantuso alleged that Wright Medical had knowledge that the Profemur hip device was experiencing higher-than-anticipated rates of failure due to fractures of the modular neck in the device.

On April 12, 2013, a component of Mr. Pantuso's left-side Profemur hip replacement device allegedly "suddenly and catastrophically failed." Accordingly, on April 15, 2013, the Profemur hip device was surgically removed from Mr. Pantuso's left side and replaced with a different artificial hip device, manufactured by a different company. Although Mr. Pantuso retains the Profemur device in his right hip, he alleged that the risk of failure prevents him from engaging in the levels of activity that he otherwise could and should have been capable of enjoying, given the marketing of the device by Wright Medical. Mr. Pantuso requested both compensatory and punitive damages resulting from the harm he suffered from Wright Medical's manufacture, design, and marketing of the Profemur hip device.

On April 17, 2014, Wright Medical filed a motion to dismiss the complaint based upon the doctrine of *forum non conveniens*. Therein, Wright Medical Technology admitted that it was headquartered in Memphis, Tennessee. Wright Medical argued, however, that the appropriate forum was in Utah, where Mr. Pantuso lived and received all medical treatment related to his hip replacements. According to Wright Medical, it would be prejudiced by proceeding in Tennessee because it would have "no access to any third-party witness or any third-party documents because they are all in Utah, beyond the subpoena power of [Tennessee] Court[s]." Wright Medical also alleged that while many of its employees were located in Tennessee, Mr. Pantuso "would have access to Wright Medical employees and Wright Medical documents under ordinary rules of civil procedure." Wright Medical further asserted that because Utah law applied to the cause of action, to hear the action in Tennessee state court would cause a substantial burden on the Shelby County courts, which Wright Medical argued are among the most overburdened courts in Tennessee. Accordingly, Wright Medical argued that Utah provided an appropriate forum in which Mr. Pantuso could prosecute his case.

On May 22, 2014, Mr. Pantuso filed a motion for pre-trial consolidation of all pending actions involving the alleged failure of the Profemur hip devices. Specifically, Mr. Pantuso alleged that eight cases were currently pending in Shelby County Circuit Court concerning the alleged failure of Wright Medical's Profemur hip device and that because of common issues of law and fact, the use of a coordinating judge would promote judicial economy.

On the same day, Mr. Pantuso also filed a response in opposition to Wright Medical's motion to dismiss on the ground of *forum non conveniens*. Mr. Pantuso contended that Utah was not an available forum because Wright Medical Group was not subject to personal jurisdiction in Utah and "has a recent history of not voluntarily appearing or accepting service of process in states where it is not registered to do business." Further, Mr. Pantuso argued that the crux of his complaint concerned not the medical treatment he received relative to his hip replacements, but the decisions made by Wright Medical concerning the manufacture, design, and marketing of the Profemur hip device, all of which occurred at Wright Medical's Memphis office. According to Mr. Pantuso, the witnesses that could testify regarding these issues were Tennessee residents who may not be amenable to process in Utah. Further, Mr. Pantuso contended that because the fact witnesses that reside in Utah were medical providers, it was nearly certain that their testimony would be submitted by deposition. Because Utah law clearly provides a method to subpoena witnesses for deposition, Mr. Pantuso argued that Wright Medical would not be prejudiced should it be unable to obtain live testimony of these witnesses. Mr. Pantuso further argued that the Utah witnesses pertained only to damages, rather than liability, unlike the Tennessee witnesses.

Wright Medical filed a reply to Mr. Pantuso's response on May 29, 2014, generally denying the allegations and contentions made by Mr. Pantuso. Importantly, Wright Medical admitted that Utah had no personal jurisdiction over Wright Medical Group; however, Wright Medical alleged that Wright Medical Group took no part in the design, manufacture, distribution, or marketing of the Profemur hip devices, and, therefore, was nothing more than a nominal party. Regardless, Wright Medical asserted that in the event that Wright Medical is found a necessary party to this lawsuit, Wright Medical Group would waive any personal jurisdiction defense it was entitled to assert in Utah. Wright Medical also reiterated all the factors it contended militated in favor of dismissal.

The trial court heard Wright Medical's motion on June 2, 2014. During the hearing, the trial court expressed its belief that regardless of where the trial took place, "one or the other side will be inconvenienced." Speaking to counsel for Wright Medical, the trial court noted "I don't think it's any more inconvenient for you than it would be for plaintiff[] if we moved back to Utah." Accordingly, on June 19, 2014, the trial court entered an order denying Wright Medical's motion to dismiss.

On July 10, 2014, Wright Medical filed a motion for an interlocutory appeal to this Court. Mr. Pantuso objected, but the motion was ultimately granted on November 14, 2014. This Court likewise granted the application for an interlocutory appeal on February 9, 2015. While the appeal was pending, this Court also granted three motions filed by Wright Medical for this Court to consider additional facts regarding the number of cases involving Wright Medical pending in Shelby County Circuit Court. According to the motions filed by Wright Medical, as of August 4, 2015, seventeen cases were pending in Shelby County Circuit Court against Wright Medical, involving plaintiffs from California, Indiana, Maryland, Ohio, Oregon, South Carolina, Tennessee, Texas, Utah, West Virginia, and Wisconsin.

## Issue Presented

In its February 9, 2015 order, this Court indicated that it would review the following issue: Whether the circuit court erred in denying Wright Medical's motion to dismiss based upon the doctrine of *forum non conveniens*?

## Applicable Law

Both parties agree in this case that our review is governed by the Tennessee Supreme Court's seminal Opinion in **Zurick v. Inman**, 221 Tenn. 393, 426 S.W.2d 767 (Tenn. 1968). In **Zurick**, the plaintiff, a resident of Georgia, sued the defendant, a resident of Alabama, for injuries related to a traffic accident that occurred in Georgia. The only apparent connection to Tennessee was the fact that the plaintiff had been transported to Tennessee for medical treatment after the accident. Consequently, the defendant filed a motion to dismiss the action on the basis of *forum non conveniens*. The trial court dismissed the case, but the Court of Appeals reversed. *Id.* at 396.

The Tennessee Supreme Court affirmed the Court of Appeals but held that Tennessee Courts have inherent power to apply the doctrine of *forum non conveniens*. As the Court explained:

> Generally speaking, *forum non conveniens* deals with the discretionary power of the court to decline to exercise a possessed jurisdiction whenever, because of varying factors, it appears that the controversy may be more suitably or conveniently tried elsewhere.

*Id.* at 769 (quoting **Cotton v. Louisville & Nashville R.R. Co.**, 14 Ill.2d 144, 152 N.E.2d 385, 388 (Ill. 1958)). According to the Court, the doctrine of *forum non conveniens* originated based on the concept that:

> Where it appears that complete justice cannot be done here, that the defendant will be subjected to great and unnecessary

4

inconvenience and expense, and that the trial will be attended, if conducted here with many if not insuperable difficulties which all would be avoided without special hardship to the plaintiff if proceedings are brought in the jurisdiction where the defendant is domiciled, where service can be had, where the cause of action arose and where justice can be done our courts decline to take jurisdiction on the general ground that the litigation may more appropriately be conducted in a foreign tribunal.

*Zurick*, 426 S.W.2d at 769 (quoting *Universal Adjustment Corp. v. Midland Bank, Ltd., of London, England, et al.*, 281 Mass. 303, 184 N.E. 152, 158 (Mass. 1933)).

The doctrine of *forum non conveniens* places a high burden on the defendant seeking dismissal; indeed, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Zurick*, 426 S.W.2d at 772 (quoting *Gilbert*, 330 U.S. at 508). Additionally, because "the application of the doctrine is a matter of discretion with the trial court[,] the review here on appeal is limited to whether there has been an abuse of discretion." *Zurick*, 426 S.W.2d at 772 (citing 48 A.L.R.2d 823, § 12). According to the Tennessee Supreme Court:

The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn.1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).
 . . . . An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular

5

discretionary decision. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein*, 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d at 42.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis*, 285 S.W.3d 856, 872–73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.*, No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)).

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524–25 (Tenn. 2010).

In order to guide a trial court in the exercise of its discretion, the *Zurick* Court set out a comprehensive test for determining whether the doctrine of *forum non conveniens* requires dismissal of an action in favor of another, more suitable forum. First, the doctrine "presupposes the court has jurisdiction of both the parties and the subject-matter." *Zurick*, 426 S.W.2d at 771. Next, there must exist "at least one forum other than the forum chosen where the plaintiff may bring his cause of action, and it is necessary the trial court determine such other forum is available." *Id.* at 772. If an alternative forum is established, the court must then consider the private interests of the litigants, which may include the enforceability of any judgment obtained; "'the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 10 (1947)). In considering these factors, the court must "weigh relative advantages

and obstacles to fair trial." *Zurick*, 426 S.W.2d at 771 (quoting *Gilbert*, 330 U.S. at 508). The Court explained that in considering these factors, the court's purpose is to ensure that "the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy." *Zurick*, 426 S.W.2d at 772 (quoting *Gilbert*, 330 U.S. at 508).

In addition to the private factors outlined above, the *Zurick* Court held that courts must also consider any applicable public factors. According to the Court:

> Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Zurick*, 426 S.W.2d at 772 (quoting *Gilbert*, 330 U.S. at 508). Because the defendant failed to establish that "the ends of justice in a broad sense require the case be tried in another forum," the *Zurick* Court ultimately concluded that the trial court erred in dismissing the case on the basis of *forum non conveniens*. *Zurick*, 426 S.W.2d at 775.

**Alternative Available Forum**

There is no dispute in this case that Wright Medical is subject to personal jurisdiction in Tennessee and that the Shelby County Circuit Court has jurisdiction to preside over this dispute. Accordingly, we first consider the issue of whether there exists an alternative available forum in which Mr. Pantuso can prosecute this action. *See Zurick*, 426 S.W.2d at 772. Wright Medical argues that Utah constitutes an alternative available forum because it is the locus of Mr. Pantuso's injuries.

Mr. Pantuso does not dispute that he resides in Utah and that all of his medical treatment occurred in Utah. Instead, in defending the motion to dismiss, he raises "[t]he two most common situations in which another forum is not available to the plaintiff[:] where the cause of action would be barred by the applicable statute of limitations in the other forum and where the defendant is not amenable to service of process in the other forum." *Package Exp.*

***Ctr., Inc. v. Snider Foods, Inc.***, 788 S.W.2d 561, 563 (Tenn. Ct. App. 1989) (quoting Ryan & Berger, *Forum Non Conveniens in California*, 1 Pac.L.J. 532, 536–37 (1970) (footnotes omitted)). Specifically, in his brief, Mr. Pantuso argues that Utah is not an available forum because the Utah statute of limitations has expired. *See* Utah Code §78B-6-706 (providing a two year statute of limitations for product liability claims from when the "claimant in the action discovered, or in the exercise of due diligence should have discovered, both the harm and its cause"). Because Mr. Pantuso asserts that he discovered his injury on April 2, 2013, he contends that the statute of limitations in Utah has now expired. In addition to this statute of limitations argument, Mr. Pantuso also argued in the trial court that one of the defendants, Wright Medical Group, was not subject to the personal jurisdiction of Utah.

In response to Mr. Pantuso's argument regarding the amenability of Wright Medical Group to service of process in Utah, Wright Medical asserted at trial that "in the event" that the court determines that Wright Medical Group is a "necessary party to this lawsuit," Wright Medical Group "will waive a personal jurisdiction defense in Utah to allow this action to proceed there against it." Similarly, in its reply brief to this Court, Wright Medical asserts that if this Court dismisses this action on the basis of *forum non conveniens* and Mr. Pantuso "refiles this lawsuit in Utah, Wright Medical will waive any statute of limitations defense by treating the refiled Utah action as having been filed on April 7, 2014, the date [Mr. Pantuso] filed this action in Tennessee." Thus, Wright Medical argues that its promises to waive the defenses of lack of personal jurisdiction and statute of limitations render Utah an available forum.

This Court confronted a similar situation in ***In re Bridgestone/Firestone***, 138 S.W.3d 202 (Tenn. Ct. App. 2003). In ***Bridgestone/Firestone***, the plaintiffs were all residents of Mexico who had been injured in automobile accidents throughout Mexico. *Id.* at 204. The plaintiffs filed product liability lawsuits against the automobile manufacturer, a Michigan resident, and the tire manufacturer, a Tennessee resident, in Tennessee state court. *Id.* The defendant manufacturers subsequently filed motions to dismiss on the basis of *forum non conveniens*. *Id.* at 205. The defendant manufacturers argued that Mexico was an available forum and that it was the more appropriate venue in which to litigate the lawsuits. *Id.* The trial court denied the motions, finding that Mexico was not an available forum, noting that Mexico failed to provide a "truly adequate alternative forum that would allow the fair disposition of these cases." *Id.*

The Court of Appeals reversed the trial court's ruling on this issue. Specifically, the Court, relying on ***Zurick***, held that the relevant question was not whether another forum was "adequate" but whether it was available. *Id.* at 206. According to the Court:

We disagree with the lower court's characterization of the applicable analysis. The relevant inquiry encompasses the availability of an alternative forum, but not its adequacy.

We begin our discussion with the plain language of the *Zurick* decision. In that case, the Tennessee Supreme Court held that "[t]he doctrine [of *forum non conveniens*] presupposes there is at least one forum other than the forum chosen where the plaintiff may bring his cause of action, and it is necessary the trial court determine such other forum is **available**." [*Zurick*, 426 S.W.2d at 772] (emphasis added). The plain language of this holding contemplates the availability of an alternative forum, but makes no mention of adequacy. Thus, the plain language of *Zurick* does not support the lower court's use of an adequacy requirement.

In addition, no Tennessee court has previously used an adequacy requirement when applying or interpreting *Zurick*. Instead, courts have limited their inquiries to the availability of alternative fora. *See, e.g.,* ***Guardsmark, Inc. v. Borg-Warner Protective Services***, No. 2A01-9409-CH-00207, 1998 WL 959664 at *1 (Tenn. Ct. App. Nov. 4, 1998); ***Shoney's Inc. v. Chic Can Enters., Ltd.***, 922 S.W.2d 530 (Tenn. Ct. App. 1995); ***Cummings, Inc. v. H.I. Mayaguez***, Inc., No. 01-A-01-9306-CH-00258, 1993 WL 398475 at *1 (Tenn. Ct. App. Oct. 1, 1993); ***Smith v. Priority Transp., Inc.***, No. 02A01-9203-CV-00074, 1993 WL 29021 at *1 (Tenn. Ct. App. Feb. 9, 1993); ***Package Express Ctr., Inc. v. Snider Foods, Inc.***, 788 S.W.2d 561 (Tenn. Ct. App. 1989); ***Bourland v. Bourland***, 1988 WL 77628 at *1 (Tenn. Ct. App. July 28, 1988); ***Chapman Chem. Co. v. Reichhold Chems.***, Inc., 1987 WL 9724 at *1 (Tenn. Ct. App. April 24, 1987); ***Raja v. Soundranayagam***, 1984 Tenn.App. LEXIS 3432 at *1 (Tenn. Ct. App. Oct. 12, 1984). Nor can it be said that the analysis of availability in these cases implicitly takes into consideration the adequacy of the remedies offered by the alternative forum. Instead, the analysis typically focuses on whether the cause of action would be barred by the applicable statute of limitations in the other forum or whether the defendant would be amenable to service therein. ***Package Express***, 788 S.W.2d at 563. Thus, a plaintiff's ability to bring

suit is, by itself, determinative of the issue of availability. There is no need to consider the nature of remedies afforded by the alternative forum. In the present matter, the record indicates that both Ford and Firestone have consented to waive any jurisdictional defenses, including any applicable statutes of limitations, if plaintiffs file suit in Mexico. As such, the courts of Mexico provide an available alternative forum.

*Bridgestone/Firestone*, 138 S.W.3d at 206–07. As is relevant to this appeal, where the plaintiffs asserted that an alternative forum was unavailable due to lack of jurisdiction and the expiration of the statute of limitations, the Court of Appeals held that the defendants' agreement to waive any jurisdictional and statute of limitations defenses in the alternative forum was sufficient to conclude that the forum was available. *Id.*

The same situation is presented in this case. Here, Mr. Pantuso has argued that Utah is not an available forum because it lacks personal jurisdiction over one defendant and the Utah statute of limitations has now expired. Like the defendants in *Bridgestone/Firestone*, Wright Medical has consented to waive any statute of limitations defense, and Wright Medical Group has consented to waive any jurisdictional defense. We understand Mr. Pantuso's reluctance to accept these concessions on the part of Wright Medical, and we acknowledge the difficulty both the *Bridgestone/Firestone* litigants and this Court experienced in the wake of that decision.[1] However, the *Bridgestone/Firestone* Opinion is binding precedent on this

---

[1] The Court in *Bridgestone/Firestone* ultimately dismissed all the pending lawsuits on the basis of *forum non conveniens*. After the dismissal in Tennessee, the plaintiffs filed their claims in Mexico. The claims in Mexico were all later dismissed. Three additional Tennessee appellate Opinions resulted from the plaintiffs' attempts to refile the claims in Tennessee on the basis that Mexico ultimately proved to be an unavailable forum. In the second case, *In re Bridgestone/Firestone*, 286 S.W.3d 898 (Tenn. Ct. App. 2008) (hereinafter "*Bridgestone/Firestone II*"), the defendants filed a motion to dismiss the refiled claims on the basis of issue preclusion, arguing that the question of whether Mexico was available for purposes of the doctrine of *forum non conveniens* could not be re-litigated. The trial court denied the motion but granted an interlocutory appeal. *Id.* at 900. The Court of Appeals concluded that issue preclusion could apply to a finding that an alternative forum is available, but that the plaintiffs may avoid preclusion by showing that the dismissals in Mexican courts resulted from good faith efforts to litigate in Mexico, rather than procedural manipulation. *Id.* at 909. Accordingly, the cases were remanded back to the trial court for a determination of these issues.

Next, in *Ramirez v. Bridgestone/Firestone, Inc.*, 414 S.W.3d 707 (Tenn. Ct. App. 2013), the trial court dismissed a number of the cases on either of two different grounds: (1) failure to join an indispensible party in the Mexican litigation, which constituted manipulation of the Mexican proceedings to secure dismissals; and (2) discovery sanctions. The Court of Appeals affirmed the dismissals on these grounds. *Id.* at 710. The trial court, however, made an alternative ruling: that dismissal was appropriate because the unavailability of the Mexican courts was foreseeable to the plaintiffs at the time of the original *forum non conveniens* dismissal in *Bridgestone/Firestone*. With regard to this ruling, the Court of Appeals also affirmed, holding that "even if the trial court erred in dismissing the cases [on the above grounds] . . . the trial court

10

Court with which we are constrained to adhere. Accordingly, we must conclude that Utah is an available forum in which Mr. Pantuso may assert his claims against Wright Medical. Therefore, we go on to consider whether the trial court "review[ed] and balance[]d the public and private factors that guide any consideration of the doctrine" of *forum non conveniens*. ***Bridgestone/Firestone***, 138 S.W.3d at 205 (citing ***Piper Aircraft Co. v. Reyno***, 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

## Private Factors

We next consider the private factors that impact this case. At trial and on appeal, both parties focus on three of the applicable factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) and the cost of obtaining attendance of willing witnesses.[2] *See **Zurick***, 426 S.W.2d at

reached the correct result because it was foreseeable to the [p]laintiffs, and should have been argued in [***Bridgestone/Firestone***], that Mexico would not accept jurisdiction over their cases." In reaching this result, we concluded that a plain reading of Mexican law indicated that Mexican courts could never accept jurisdiction over foreign defendants in a personal injury action, and noted that plaintiffs, in their application for permission to appeal to the Supreme Court in ***Bridgestone/Firestone***, argued "that Mexico was not an available forum." ***Id***. at 722.

Finally, in the recent case of ***In re Bridgestone/Firestone***, No. M2013-02849-COA-R3-CV, 2015 WL 3623591, at *1 (Tenn. Ct. App. June 10, 2015), the defendants filed motions to dismiss the plaintiffs' remaining claims, this time on the basis of collateral estoppel. The trial court granted the motions, relying on the foreseeability analysis adopted in ***Ramirez***. The Court of Appeals reversed, concluding that while collateral estoppel was applicable to a dismissal on *forum non conveniens* grounds, two independent exceptions may preclude its application; 1) that dismissal in the alternative forum was unforeseeable at the time of the *forum non conveniens* dismissal in this Court; or 2) that the plaintiffs proceeded in good faith in the alternative forum but that their claims were nevertheless dismissed. Thus, the Court held that "an alternate exception to collateral estoppel may apply regardless of whether the unavailability of a Mexican forum was foreseeable." ***Id.*** at *9. The Court of Appeals therefore reversed the dismissal of the plaintiffs' claims and remanded for further proceedings.

[2] Wright Medical also argues in its brief that "courts have placed particular emphasis on the private factor regarding the forum in which the events at issue took place," citing ***Dowling v. Richardson-Merrell, Inc.***, 727 F.2d 608, 616 (6th Cir. 1984). While the Sixth Circuit is free to place particular emphasis on this factor, this Court is not. Indeed, the ***Zurick*** Court specifically held that:

> That the cause of action arose outside the State **is not a factor** to be considered on the question of whether the doctrine should be applied in a particular case. It is necessary this fact exist and be shown in order to raise the question of the application of the doctrine.

***Zurick***, 426 S.W.2d at 773 (emphasis added). Accordingly, we disagree with Wright Medical that this factor militates in favor of dismissal.

11

772. Because the ***Zurick*** Court directed that courts should consider the "relative" ease of access, we consider how these factors will impact not only Wright Medical but also Mr. Pantuso. ***Id.*** at 773 (considering the residences of both the plaintiff's and defendant's witnesses).

Specifically, Wright Medical argues that all witnesses who will testify regarding Mr. Pantuso's medical treatment, including his initial surgery to implant the Profemur hip devices and any treatment he received to remove the allegedly defective device in his left hip, are residents of Utah. Thus, Wright Medical asserts that it will be difficult, if not impossible, to compel these witnesses to testify at trial, and that the cost of deposing these witnesses will be prohibitive.[3] Wright Medical, therefore, asserts that these factors militate in favor of dismissing the lawsuit in Tennessee.

To support its argument, Wright Medical cites this Court's Opinion in ***Package Express Center, Inc. v. Snyder Foods, Inc.***, 788 S.W.2d 561, 562 (Tenn. Ct. App. 1989). In ***Package Express***, the plaintiff lessor brought an action against the defendant lessee for breach of a lease. Although the lessee was a Missouri corporation, the parties' lease designated Greene County, Tennessee as the proper venue for any litigation and granted Tennessee personal jurisdiction over the parties. The negotiation and performance of the contract, however, took place completely in Missouri. After an alleged breach of the lease, the lessor filed suit in Tennessee. The trial court denied the lessee's motion to dismiss on the basis of lack of jurisdiction, but ultimately dismissed the lawsuit on the basis of *forum non conveniens*.

The Court of Appeals affirmed the trial court's decision to apply the doctrine of *forum non conveniens*. In reaching its decision, the Court focused on the trial court's finding that while the dispute had little connection with Tennessee, as "the vast majority, if not all, of the witnesses reside in Missouri. The contract was to be performed in Missouri and any breach of the contract occurred in Missouri. Similarly, any fraudulent misrepresentation by plaintiff occurred in Missouri." The Court of Appeals cited with apparent approval the following findings of the trial court:

---

[3] Both Tennessee and Utah have enacted substantially similar versions of the Uniform Interstate Depositions and Discovery Act ("the Act"). Under the Act, a party seeking to conduct a deposition by foreign subpoena must first obtain a foreign subpoena from the court having jurisdiction over the case. The party must then "submit [the] foreign subpoena to a court in the judicial district in which discovery is sought to be conducted in Utah." Utah Code Ann. § 78B-17-201; *see also* Tenn. Code Ann. § 24-9-203 ("A party may submit a foreign subpoena to a clerk of court in the county in which discovery is sought to be conducted in this state."). Accordingly, while only one subpoena need be issued to depose a party residing in the state where the case has been filed, two subpoenas are required to depose a foreign witness. Regardless, there can be no dispute that either party will be able to depose foreign witnesses regardless of where the action is ultimately prosecuted.

> Most of the evidence would have to be taken by deposition since all of the non-party witnesses would be beyond the subpoena power of this Court. Needless to say, deposition evidence is quite inferior to testimony presented from the witness stand since the Court is deprived of the ability to observe the witness. It is anticipated that practically all of the witnesses would be those from Missouri. Since it was plaintiff that solicited this contract in Missouri, it is difficult to see how it could be terribly inconvenient for plaintiff to litigate this suit in Missouri. On the other hand, it would be extremely inconvenient and burdensome for defendant to be compelled to litigate here in Tennessee.

*Package Exp.*, 788 S.W.2d at 563–64. Thus, Wright Medical argues that following the reasoning in *Package Express*, this Court should dismiss this case because Wright Medical will be unable to obtain live testimony from all of the necessary medical witnesses.

Respectfully, we do not agree. First, as discussed above, the defendant seeking dismissal in *Package Express* was a non-resident of Tennessee. The trial court and the Court of Appeals, therefore, concluded that it would "be extremely inconvenient and burdensome" to litigate in Tennessee. *Id.* The same cannot be said in this case. Here, Wright Medical, rather than the plaintiff, is a resident of Tennessee. This Court has previously remarked that "it is indeed unusual to have the native citizen cry *forum non conveniens*." *Bourland v. Bourland*, No. 34, 1988 WL 77628, at *2 (Tenn. Ct. App. July 28, 1988). Requiring Wright Medical to litigate in its home state certainly does not rise to the level of inconvenience and burden that would have been experienced by the *Package Express* defendant, who had no contact whatsoever with the State of Tennessee other than through the choice of forum provision included in the contract.

Moreover, the defendant in *Package Express* filed the affidavits of three employee witnesses "who, because of their own health, the health of their immediate family, and other personal problems, testified they were unable to come to Tennessee for trial." *Package Exp.*, 788 S.W.2d at 564. The *Zurick* Court thoroughly explained the defendant's burden on this factor:

> [T]he fact there are out-of-state witnesses is not of itself enough to support an application of the doctrine. This factor has to be supported by facts showing why, due to out-of-state witnesses, there is a strong likelihood defendant will be done an injustice if forced to go to trial in the forum selected by plaintiff. This can be done by giving the names of the witnesses, nature and

13

materiality of their testimony, and any other applicable facts. It is upon these facts the trial court exercises its discretion in the application of the doctrine.

*Zurick*, 426 S.W.2d at 775 ("The failure of the defendant to give the names of its witnesses, to indicate what their testimony would be, to show how vital that testimony would be to the defense of the case and to show why the depositions of these witnesses could not be used successfully, furnished a reasonable basis for [the trial judge] to find that the defendant failed to sustain its burden of showing that the balance as to the convenience of the witnesses was so strongly in favor of the defendant as to overcome the weight to be given to the plaintiff's choice of forum.") (quoting *General Portland Cement Co. v. Perry*, 204 F.2d 316, 397 (7th Cir. 1953)). In this case, the trial court noted at the hearing on the motion to dismiss that it had not been furnished with any list of witnesses that would be unable to be presented live at trial, the materiality of these witnesses' testimony, or anything detailing "the strong likelihood" that Wright Medical will be done an injustice if forced to litigate in Tennessee. A thorough review of the record on appeal reveals no such document was submitted by Wright Medical.[4]

Finally, and most importantly, in *Package Express*, "the vast majority, if not all, of the witnesses reside[d] in Missouri." *Package Exp.*, 788 S.W.2d at 563. The same is simply not true in this case. Here, Mr. Pantuso argues that his complaint concerns not the medical treatment he received in Utah, but the design, manufacture, and marketing of the Profemur hip devices. It is reasonable to assume that witnesses who are able to testify to these issues will be available in Tennessee, as Wright Medical is headquartered here. In its brief to this Court, Wright Medical asserts that all employees of Wright Medical will be available through traditional discovery. Specifically, in its brief, Wright Medical asserts that: "Wright Medical's counsel has represented Wright Medical employees and former employees, and, therefore, Wright Medical can procure their presence at depositions and trials. Further Wright Medical's documentary evidence can be produced no matter where the action is pending, since Wright Medical would be a party."

This statement in Wright Medical's brief, however, is not an accurate reflection of Wright Medical's assurances in the trial court. Indeed, at the June 2, 2014 hearing on the motion to dismiss, the trial court questioned whether Wright Medical "would assure [Mr. Pantuso] contractually, because that is what this is going to be if they dismiss this and go up

---

[4] We note that the witnesses that reside in Utah generally concern medical treatment received by Mr. Pantuso. Accordingly, it is not clear from the record that Wright Medical was able to obtain the necessary information to determine the names and materiality of each and every medical witness at this early stage of litigation. However, several medical providers are named in Mr. Pantuso's complaint. Accordingly, it appears that Wright Medical could certainly have provided the names and the materiality of the testimony of these medical providers as support for its motion to dismiss. Wright Medical, however, failed to do so.

there, that all those witnesses and anybody else they want from Wright Medical will be compelled to come testify in person in Utah?" Counsel for Wright Medical responded that: "To my knowledge, they've never asked us if we would consent to do that. And I don't have authority to tell you that right this instant." From our review of the trial court record, no such assurance was ever offered by Wright Medical. Accordingly, despite Wright Medical's contentions in its brief, we are unwilling to assume that Mr. Pantuso will be able to obtain live testimony from all Wright Medical's employees and formers employees should the case be dismissed in Tennessee and refiled in Utah.

Because of Mr. Pantuso's possible inability to call all his necessary witnesses in Utah, the trial court specifically found that "one or the other side will be inconvenienced." Under these circumstances, we must agree with the trial court's finding that regardless of where the case is litigated, one side may be prejudiced by its inability to call live witnesses. The trial court determined that given the fact that both sides would be prejudiced, Wright Medical failed to meet its burden to show that dismissal was appropriate. This Court has previously held that where "trials promise to be costly, time-consuming, and difficult for the litigants regardless of whether they are held in Tennessee or [another forum,]" the trial court was within its discretion to conclude that the private factors do not weigh in favor of dismissal on the basis of *forum non conveniens*. *See* **Bridgestone/Firestone**, 138 S.W.3d at 207. Consequently, we agree that Wright Medical has "'failed to sustain its burden of showing that the balance as to the convenience of the witnesses was so strongly in favor of [Wright Medical] as to overcome the weight to be given to [Mr. Pantuso's] choice of forum.'" **Zurick**, 426 S.W.2d at 775 (quoting **Perry**, 204 F.2d at 397).

From our review, the other factors outlined in **Zurick** also do not favor dismissal. First, unlike in **Zurick**, this case does not involve two opposing parties who are both non-residents, or even a plaintiff/resident and a defendant/non-resident. *See* **Zurick**, 426 S.W.2d at 773 ("The non-residency of the parties is a factor in application of the doctrine when considered with other circumstances relating to non-residency."). According to the **Zurick** Court, this factor is relevant "when the forum chosen by the plaintiff would require a defendant a great expense and inconvenience to transport himself and/or his witnesses a long distance[.]" *Id.* Clearly, this factor cannot apply in this case, as Wright Medical seeks to move this litigation from its own home domain to a forum hundreds of miles away. In addition, there is no dispute that this case will not require either party to present proof regarding premises, where a view of the premises would be relevant. *See id.* at 772. Accordingly, this factor cannot militate in favor of dismissal.

15

Wright Medical next contends that this Court should consider persuasive *Masters v. Wright Medical Technology, Inc.*, 2:11-cv-2451 (W.D. Tenn. May 9, 2012), which also concerned the availability of foreign witnesses in a case against Wright Medical. In *Masters*, the plaintiff was a resident of Great Britain and all of her medical treatment related to the implantation of the Profemur hip device occurred there. Wright Medical asserted generally the same argument in favor of dismissal due to its inability to compel foreign witnesses to testify. The trial court agreed with Wright Medical and dismissed the complaint on the basis of *forum non conveniens*.

We respectfully decline to follow *Masters* for several reasons. First, the *Masters* decision was issued by a federal district court; while it may be persuasive, it has no precedential value and we are free to disregard its decision. *See Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 430 (Tenn. 2011) ("Although federal judicial decisions 'interpreting rules similar to our own are persuasive authority for purposes of construing the Tennessee rule,' they 'are non-binding even when the state and federal rules are identical.'") (quoting *Harris v. Chern*, 33 S.W.3d 741, 745 n. 2 (Tenn. 2000)). Second, the *Masters* decision is a trial court decision; accordingly, the *Masters* Court was tasked with making an initial determination as to whether the doctrine of *forum non conveniens* required dismissal. *See Masters*, 2:11-cv-2451, at \*1. In this case, however, we are not tasked with making an initial determination, but must review the trial court's decision to deny the motion to dismiss under the deferential abuse of discretion standard. *See Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005) (describing the abuse of discretion as "deferential"). As such, the procedural posture and standard of review in *Masters* are simply not analogous to the situation presented in this case.

Finally, the *Masters* Opinion bases its decision to dismiss on the law that where a plaintiff is "foreign," the plaintiff's choice in forum "is given less deference." *Masters*, 2:11-cv-2451, at \*2 (involving a plaintiff resident of Great Britain). Indeed, the federal cases that have applied this less deferential standard have typically involved claims filed by plaintiffs from foreign countries. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 235, 102 S. Ct. 252, 255, 70 L. Ed. 2d 419 (1981) (involving plaintiff residents of Scotland); *Stewart v. Dow Chem. Co.*, 865 F.2d 103, 104 (6th Cir. 1989) (involving a Canadian plaintiff); *see also Duha v. Agrium, Inc.*, 448 F.3d 867, 874 (6th Cir. 2006) (noting that "[t]his lesser standard of deference should presumptively not apply to a U.S. plaintiff's choice of forum"); *but see Cincinnati Ins. Co. v. O'Leary Paint Co.*, 676 F. Supp. 2d 623, 632 (W.D. Mich. 2009) (applying the less deferential standard where the plaintiff was a non-resident of the forum state). Tennessee Courts have never indicated that a less deferential standard will apply to the plaintiff's choice of forum where the plaintiff is not a resident of Tennessee. Because this case involves a dispute between two United States citizens and Tennessee law has never

applied a less deferential standard in this situation, we decline to assign the *Masters* decision any persuasive value.

In sum, although we agree with Wright Medical that it may be prejudiced by its inability to call live witnesses, we must balance this prejudice against the prejudice that may result to Mr. Pantuso if he is likewise unable to also call live witnesses. In addition, because Wright Medical is headquartered in Tennessee, we cannot give great weight to its argument that requiring it to litigate in its home state will cause it considerable expense and inconvenience. Given the deference accorded to a plaintiff's choice of forum, we cannot conclude that the balance of the private factors weighs in favor of dismissal.

### Public Factors

Wright Medical next asserts that the public factors weigh in favor of dismissal. We respectfully disagree. As previously discussed, the public factors that must be considered include: (1) whether a Tennessee court will be required to apply the law of another forum; (2) whether the litigation in Tennessee will impose a burden on our courts and jurors; and (3) whether another forum has a greater interest in deciding the controversy. *See Zurick*, 426 S.W.2d at 772 (quoting *Gilbert*, 330 U.S. at 508).

Wright Medical first contends that Tennessee courts will be required to apply Utah law in deciding the issues presented in this case, and that the large number of cases involving Wright Medical will result in a strain on the Shelby County Circuit Court. Mr. Pantuso does not appear to dispute that this case will involve the application of Utah law, or that the large number of filings against Wright Medical, in addition to other cases, could possibly cause strain or delays in Shelby County Circuit Court. In *Zurick*, however, the Tennessee Supreme Court indicated that this factor would only weigh in favor of dismissal where the law to be applied is "so materially different from our own that their application would present difficulty to the court; or the laws of the foreign state, applicable to the case, are against the public policy of our State." *Id.* at 774 (citing *Mexican Nat. R. Co. v. Jackson*, 89 Tex. 107, 33 S.W. 857, 31 L.R.A. 276 (Tex. 1896); *Whitlow v. N.C. & St. L. Ry. Co.*, 114 Tenn. 344, 357, 84 S.W. 618, 68 L.R.A. 503 (1904)). The *Zurick* Court concluded that because the defendant failed to show that the applicable law was materially different from the law of Tennessee or in violation of Tennessee's public policy, the defendant failed to meet its burden to show that this factor weighed in favor of dismissal. *Zurick*, 426 S.W.2d at 774. The same is true in this case. Nothing in Wright Medical's brief to this Court explains or even asserts that Utah's product liability law is so materially different from Tennessee law as to present great difficulty for our courts or that Utah law in any way violates public policy. Accordingly, this factor cannot weigh in favor of dismissal.

17

We also respectfully reject Wright Medical's argument regarding the strain this case, and others like it, will place on the Shelby County Circuit Court. In ***Bridgestone/Firestone***, the Court of Appeals concluded that this factor weighed in favor of dismissal as:

> [T]he trial of these cases will involve the civil codes of at least eleven different Mexican states. This means that the cases would not likely be consolidated into a single action for trial, given the substantial likelihood of jury confusion arising from the multiplicity of statutory schemes. It follows that multiple juries would have to be empaneled increasing the burden upon the community of Davidson County. This burden does not seem warranted, considering that Davidson County's only link to the litigation is Firestone's alleged conspiratorial activity. By contrast, Mexico is linked to the current litigation by almost every critical event at issue. As such, the public interest factor regarding jury duty would seem to favor dismissal.

***Bridgestone/Firestone***, 138 S.W.3d at 209. Unlike in ***Bridgestone/Firestone***, Wright Medical offers no explanation as to how Shelby County Circuit Courts will be overburdened by litigation involving Wright Medical, other than a conclusory assertion regarding the number of cases filed. Indeed, there is nothing in the record to establish that Shelby County juries would be confused by the issues presented in this case or that none of the other pending cases can be consolidated.[5]

Additionally, as previously discussed, this Court's review is limited to determining whether the trial court "review[ed] and balance[]d the public and private factors that guide any consideration of the doctrine" of *forum non conveniens*. ***Bridgestone/Firestone***, 138 S.W.3d at 205. The trial court clearly considered Wright Medical's argument regarding the strain this case may cause, but ultimately rejected this argument, finding that it was insufficient to defeat the plaintiff's choice of forum. We are unwilling to second-guess a trial court's decision regarding its ability to manage a voluminous docket.

Wright Medical also argues that "Utah has a greater interest in the outcome of this case because it is where the alleged injuries occurred." According to Wright Medical, Utah courts and jurors should decide this controversy, as all of Mr. Pantuso's injuries allegedly occurred in Utah. To support this argument, Wright Medical relies on this Court's Opinion in ***Bridgestone/Firestone***. As previously discussed, the ***Bridgestone/Firestone*** case involved

---

[5] Unlike in ***Bridgestone/Firestone***, the pending cases against Wright Medical were not consolidated for purposes of this appeal. We note, however, that there is a pending motion filed by Mr. Pantuso in which he requests consolidation of all pending cases against Wright Medical for pre-trial activities.

18

product liability claims involving Mexican citizens, where the products were utilized and allegedly failed in Mexico. As the Court explained:

> In the present matter, all the deceased were from Mexico; all the plaintiffs are from Mexico; the cars and tires at issue were purchased in Mexico; the cars and tires at issue were serviced and maintained in Mexico; the accidents all occurred in Mexico; and Mexican law will govern all substantive issues. In short, the present litigation is of primary local interest to Mexico, rather than Tennessee. The plaintiffs' allegations of a conspiracy involving Firestone are not sufficient to counterbalance Mexico's interest, as a sovereign nation, in deciding controversies that involve its citizens and occur within its borders.

*Bridgestone/Firestone*, 138 S.W.3d at 210. We agree that the facts in *Bridgestone/Firestone* are somewhat analogous to this case. There are some important differences, however.

First, unlike in *Bridgestone/Firestone*, this case does not involve the interest of a sovereign nation to decide controversies involving its own citizens. In addition, a careful review of the claims asserted by Mr. Pantuso indicate that his claims have little relation to the medical treatment he received in Utah; instead, he claims that his injuries result from decisions made by Wright Medical at its headquarters in Tennessee. Accordingly, the State of Tennessee has an interest in having the case resolved here. Finally, unlike in this case, the *Bridgestone/Firestone* Court concluded that other factors weighed in favor of dismissal, including the likelihood that a Tennessee court presiding over the case would be required to apply materially different Mexico law and the fact that thirty-one juries were likely to be required to resolve the pending disputes. *See id.* at 209. Given the fact that most other factors either do not weigh in favor of dismissal or are equally balanced between the parties, we cannot conclude that this factor alone renders the trial court's denial of the motion to dismiss an abuse of discretion.

In sum, after considering the relevant public and private factors, we cannot conclude that the trial court abused its discretion in denying Wright Medical's motion to dismiss on the ground of *forum non conveniens*. The trial court's judgment is, therefore, affirmed.

### Conclusion

The judgment of the Circuit Court of Shelby County is affirmed and this cause is remanded to the trial court for all further proceedings. Costs of this appeal are taxed to Appellants Wright Medical Technology, Inc. and Wright Medical Group, Inc. and their surety.

19

_____
J. STEVEN STAFFORD, JUDGE